UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHIDI EZE,

                          Plaintiff,

    -against-

JP MORGAN CHASE BANK, NA,

                          Defendant.

------------------------------------------------------------x

MEMORANDUM & ORDER

09-CV-2722 (ENV)(LB)

VITALIANO, D.J.

Pro se plaintiff Chidi Eze has moved to dismiss the counterclaims of defendant-counterclaimant JP Morgan Chase ("Chase") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Chase has cross-moved to dismiss the complaint, pursuant to Rule 12(b)(6), and for judgment on the pleadings as to one of its counterclaims, pursuant to Rule 12(c). For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.[1]

BACKGROUND

In his "Verified Complaint," Eze, an attorney admitted to practice before this Court, alleges that, on June 3, 2008, he formed and registered a corporation known as Duce, of which he was and remains the principal. Duce, through Eze, entered into a lease agreement to rent a business location at 1132 Flatbush Avenue, Brooklyn, NY 11226. On June 24, 2008, Duce opened checking and savings business accounts with Chase under the name of Duce Enterprises, Inc. Duce's mailing address on the accounts was listed as 1132 Flatbush Avenue, Brooklyn, NY 11226. Kindra Williamson, Duce's manager, was listed on the accounts as an "operator" of

---

[1] Third-party defendants Kindra Williamson and Duce Enterprises, Inc. ("Duce") are not parties to these motions.

Duce's business.

Although Eze does not deny that Duce opened the checking and savings accounts, he asserts that "Duce did not request nor applied [sic] for a credit card to be issued to anyone." (Complaint ("Compl.") ¶ 13.) In any event, in or about July of 2008, Eze received a Visa credit card from Chase both in his own name and that of Duce. (Id. ¶ 14.) His complaint alleges that the credit card "has never been used, and in fact, was never signed." (Id.) Chase supposedly forwarded an identical copy of the credit card, bearing the names of Williamson and Duce, to Williamson at the Flatbush Avenue address. (Id. ¶ 15.) The complaint then states that "Ms. Williamson used the credit card, bearing both her name and Duce . . . personally and for business at other times. Plaintiff was actually unaware that Ms. Williamson was using said credit card in that manner." (Id. ¶ 16.) He has denied authorizing or ratifying the issuance of the cards in any writing, or ever "even sign[ing] that card let alone us[ing] it"; he has further denied personally guaranteeing the card issued under his name. (Id. ¶ 18.) Nevertheless, he adds, in his Memorandum of Law, that Duce made payments on the credit card until May or June of 2009, when business slumped and Duce began defaulting. Eze seeks a judgment declaring that Chase cannot hold him personally liable for any actions taken in Duce's corporate name, or for any debt chargeable to the use of either credit card issued to Duce, and an order permanently enjoining Chase from taking actions against his interests and rights.[2]

In its Amended Answer with Counterclaims, Chase avers that, on June 25, 2008, Eze applied for a credit card in both his and Duce's name. Chase alleges that, the following day, Eze and Chase entered into a Business Card Credit Agreement ("BCCA"), in line with Eze's application of the prior day. Chase further alleges that Eze, who was responsible for making

---

[2] Originally, Eze asserted causes of action for intentional and/or negligent infliction of emotional distress, seeking damages of $2,250,000. At oral argument on May 6, 2010, he voluntarily withdrew these claims. (See Transcript of Motion, dated May 6, 2010 ("5/6/10 Tr."), at 26-27.)

2

payments on any credit card issued pursuant to that agreement, also used the Duce credit card to make purchases from July of 2008 to May of 2009. It is undisputed that Eze stopped making payments in or about May of 2009, which, of course, Chase asserts was a breach of the BCCA. In its counterclaim seeking recompense for that breach, Chase alleges that (1) Eze owes $13,584.73 plus interest (from May 2009), or, in the alternative, that (2) Eze has been unjustly enriched by using the credit card and not paying the money owed on the purchases and, consequently, owes Chase $13,584.73 plus interest (from May 2009). Chase has moved for judgment on the pleadings as to its first counterclaim only. It has also moved to dismiss Eze's complaint in its entirety.

STANDARD OF REVIEW

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), "as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" Rhulen Agency, Inc. v. Ala. Ins. Guaranty Assoc., 896 F.2d 674, 678 (2d Cir. 1990) (citation omitted). A case is properly dismissed under Rule 12(b)(1) where a court "'lacks the statutory or constitutional power to adjudicate it.'" Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

In ruling on a motion to dismiss under subsection 12(b)(6), "a court must accept as true all of the [properly pled] allegations contained in a complaint," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (noting that, in considering a motion to dismiss, a court must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the

3

non-moving party.'" (citation omitted)), and may dismiss only "where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted). But, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Indeed, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

In reaching its decision, a court may consider, in addition to the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit, and matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000). More specifically, "'[w]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which [he] solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.'" Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2007) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)), aff'd, 552 U.S. 389 (2008). Thus, the Court may rely upon the BCCA covering the credit card Eze admits he paid without objection for several months in ruling on the motion to dismiss. (See Affidavit of Anthony (Scott) Demczak in Opposition to Plaintiff's Motion to Dismiss and in Support of Chase's Cross-Motion ("Demczak Aff."), Ex. 1.)

"[T]he same standards that are employed [in] dismissing a complaint for failure to state a

4

claim under Fed. R. Civ. P. 12(b)(6) are applicable" to granting or denying judgment on the pleadings. Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir. 1987) (citations omitted); accord Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

DISCUSSION

A.   Subject-Matter Jurisdiction Exists over this Action

The Court finds that it has original jurisdiction over this action on two grounds. First, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a): Eze and Chase are citizens of different states (New York and Delaware, respectively), and the amount in controversy at the time that the complaint was filed exceeded $75,000. See, e.g., Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2d Cir. 2005) ("[F]or purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events."); see also id. ("The district court should not have considered a post-filing event in its calculation of the amount in controversy and therefore should not have dismissed the actual damages claim on jurisdictional grounds.").

Second, the Court has federal question jurisdiction based at least upon Eze's claims under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"). (See infra Part E.) Relief under Rule 12(b)(1) is unavailable.

B.   Business Card Credit Agreement

The terms of the BCCA provide plain notice of obligation: "You will be bound by this agreement if you or anyone authorized by you use[s] your account for any purpose, even if you don't sign your card. Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used

your account for any purpose." (Demczak Aff., Ex. 1, at 1.) The BCCA defines "you" to mean "all persons responsible for complying with this agreement, including the person who applied for the account and the person to whom [Chase] address[es] billing statements, as well as any person who agrees to be liable on the account." (Id.)

C.  The Statute of Frauds Does Not Apply

Eze argues that the BCCA cannot bind him and Duce jointly and severally because the statute of frauds requires that any agreement to answer for the debt of another be in writing.

In New York, the Statute of Frauds is set forth in § 5-701of the state's General Obligations Law:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . . 2. Is a special promise to answer for the debt, default or miscarriage of another person." (McKinney 2009).

Accepting as true all of the properly pled allegations in the Chase counterclaims, the Court denies Eze's motion on this ground because, first, Eze is not being asked to answer for the debt of another. Instead, Chase is asking that Eze be held liable for his own debt; a debt undertaken as the principal of Duce and as a party to the BCCA. Thus, the Statute of Frauds is not implicated here.[3]

Second, it is well established that credit card agreements such as the BCCA are both common and, in light of the circumstances alleged by Chase, if true, lawful. See, e.g., Kelly v. Unifund CCR Partners Assignee of Palisides Collection LLC, No. 09-CV-8510, 2009 U.S. Dist. LEXIS 126059, at *4 (S.D.N.Y. Oct. 7, 2009) ("The issuance of a credit card constitutes an offer of credit, and the use of the card constitutes acceptance of the offer. The terms of the contract are

---

[3] Chase argues that Delaware, and not New York, law applies. See, e.g., DEL. CODE ANN. tit. 6, § 2714(a). The outcome would be the same, however, applying either state's statute of frauds.

the credit card agreement. A contract will be interpreted in accordance with the intent of the parties as expressed in the language of the agreement." (citing Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002); Katina, Inc. v. Famiglietti, 306 A.D.2d 440, 761 N.Y.S.2d 327 (2d Dep't 2003); Browner v. Gateway 2000, Inc., 246 A.D.2d 246, 676 N.Y.S.2d 569 (1st Dep't 1998); Feder v. Fortunoff, Inc., 114 A.D.2d 399, 494 N.Y.S.2d 42 (2d Dep't 1985))); Anonymous v. JP Morgan Chase & Co., No. 05-CV-2442, 2005 U.S. Dist. LEXIS 26083, at *9-*10 (S.D.N.Y. Oct. 31, 2005) ("Using a credit card and making payments to the credit provider binds the cardholder to the terms and conditions of card use." (citing Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. Ct. 1998)); In re Carlin, No. 88-11689, 2009 Bankr. LEXIS 725, at *6 (Bankr. S.D.N.Y. Feb. 10, 2009) ("A credit card user implicitly agrees to the terms of use whenever he uses the card." (citing Anonymous, 2005 U.S. Dist. LEXIS 26083, at *9-10)); see also Citibank (S.D.) N.A. v. Roberts, 304 A.D.2d 901, 902, 757 N.Y.S.2d 365, 366 (3d Dep't 2003) ("Plaintiff [bank] met its initial burden on the [summary judgment] motion by presenting proof establishing, among other things, the existence of the agreement between the parties, issuance of the credit cards at defendant's address, use of the credit cards, retention of the monthly statements and payments on the account by defendant . . . with checks that had defendant's address printed on the front") (citation omitted).

The cases cited by Eze, in an effort to bring the BCCA within the purview of the statute of frauds, are inapposite. See, e.g., Am. Express Co. v. Koerner, 452 U.S. 233 (1981) (concerning the Truth-in-Lending Act's inapplicability to cards opened in the name of a corporation and stating simply, in the Lexis summary quoted and relied upon by Eze, that corporate officers had signed a form agreeing to be jointly and severally liable for all charges incurred through use of a company card); McNamara v. Tourneau, Inc., 464 F. Supp. 2d 232

7

(S.D.N.Y. 2006) (noting, unsurprisingly, that a contract requires offer and acceptance, consideration, mutual assent, and intent to be bound); Salzman Sign Co., Inc. v. Beck, 10 N.Y.2d 63, 67 (1961) (stating that "an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice -- once as an officer and again as an individual," but (1) in the context of a personal guarantee and (2) not in the context of a credit card agreement); American Express Co. v. Geller, 74 Misc. 2d 284, 286-87 (N.Y. Civ. Ct. 1973) (stating simply that an ordinary employee—that is, a non-principal—should not be liable for debt not paid by a corporation).

Because the statute of frauds is inapplicable to the facts of this case, this branch of Eze's motion to dismiss is denied.

D.   No Piercing of the Corporate Veil

"The veil separating corporations and their shareholders may be pierced in some circumstances . . . . The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances." Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003) (citations omitted); see also United States v. Bestfoods, 524 U.S. 51, 62 (1998) ("[T]he corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.").

More pertinently, as contended by Chase, Eze's suggestion that Chase's claims seek to pierce the corporate veil is entirely without merit. Quite to the contrary, Chase avers that the credit card mentioned in its counterclaims belonged from the start to Duce and Eze jointly. Eze himself admitted that the credit card was valid. (See, e.g., Transcript of Pre-Motion Conference,

dated October 28, 2009 ("10/28/09 Tr."), at 4 ("THE COURT: A valid credit card issued to the corporation[] of which you are the president? MR. EZE: Yes.").) Simply put, there is not the slightest hint that Chase's counterclaims rest on some sort of corporate veil piercing theory. Instead, they are simply claims by a creditor seeking debt payment by one of the two debtor-holders of a particular credit card account. On this ground as well, Eze's motion must be denied.

E.   The Truth in Lending Act Does Not Apply

Eze next cobbles together an argument from several sections of the Truth-in-Lending Act ("TILA"), with the cobbling coming in his memorandum of law and fashioned from 15 U.S.C. §§ 1632(a), 1638(b), 1640, and 1642, and Regulation Z § 226.17(b). Yet, under 15 U.S.C. § 1642, while "[n]o credit card shall be issued except in response to a request or application therefor[, t]his prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card."

But back to basics first. Eze did not allege a violation of TILA in his complaint, despite his attempts to suggest otherwise. (See, e.g., Memorandum of Law in Support of Motion to Dismiss Defendant's Counterclaims Pursuant to FRCP 12, at 10 (citing Compl. ¶ 18).) Consequently, the machinations of the memorandum of law do not put the unpled claim before the Court, see, e.g., Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000), and Chase need not move to dismiss it either as a claim or defense to the counterclaims.

Even if the Court could properly consider this argument, Eze's claim would substantively fail for two independent reasons. First, assuming, on his motion to dismiss the counterclaim (or as an affirmative defense), the truth of Chase's counterclaim allegations that Eze applied for the controverted credit card, by so applying, Eze would have fallen squarely within the exception to

9

§1642, meaning that there was no violation of TILA.[4]

Second, "[t]he declared purpose of the [TILA] is 'to assure a meaningful disclosure of credit terms so that the <u>consumer</u> will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1601(a), 1611, 1631, 1632, 1635, 1638, 1640; Mourning v. Family Publ'ns Serv., Inc., 411 U.S. 356, 363-368 (1973)) (emphasis added). Thus, TILA pertains solely to the extension of consumer credit. It is, however, undisputed that the credit card at issue here was a business, and not a consumer, credit card, meaning that TILA is inapplicable.

For the foregoing reasons, Eze's motion to dismiss the counterclaims on TILA grounds is denied.[5]

F.   The Court Has Jurisdiction over Chase's Counterclaims

On a more fundamental level, Eze argues that the Court has no jurisdiction over Chase's counterclaims. This, of course, would be true if Chase had sought to sue Eze independently, in that Chase's counterclaims seek an amount well below $75,000, see, e.g., 28 U.S.C. § 1332, and

---

[4] The difference between the pleadings on this point is slight but significant. Both agree that credit was extended by means of a credit card. Eze claims, though, it was extended only to Duce. Eze's limitation is not supported properly before the Court on these motions.

[5] Eze makes similarly doomed claims under FDCPA and FCRA. FDCPA is inapplicable to this case because Chase is not acting as a debt collector. Instead, as asserted by both plaintiff and defendant, Chase seeks to collect its own debt. See Bleich v. Revenue Maximization Group, Inc., 239 F. Supp. 2d 262, 263-64 (E.D.N.Y. 2003) ("The FDCPA prohibits deceptive and misleading practices by 'debt collectors.' The statute specifically defines debt collectors as those engaged in 'any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another.' Thus, by its terms, the FDCPA limits its reach to those collecting the debts 'of another' and does not restrict the activities of creditors seeking to collect their own debts." (citing, inter alia, 15 U.S.C. § 1692e; Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998); Harrison v. NBD Inc., 968 F. Supp. 837, 841 (E.D.N.Y. 1997)) (emphasis omitted). FCRA is inapplicable because there is no allegation that Chase has reported any information regarding Eze or Duce to the credit-reporting agencies. See 15 U.S.C. § 1681. Accordingly, such claims are dismissed.

are grounded in state law. He argues further that Chase's counterclaims are merely permissive[6] and that, consequently, this Court should dismiss the counterclaims for lack of subject-matter jurisdiction. The Court declines to do so. Indeed, under Jones, 358 F.3d at 213, the issue is not whether there is independent jurisdiction but, rather, whether there is supplemental jurisdiction.

Under United Mine Workers v. Gibbs, a court may exercise supplemental jurisdiction over claims that arise out of a common nucleus of operative fact. 383 U.S. 715 (1966). Whether or not counterclaims are "permissive" or "compulsory" is irrelevant. See Jones, 358 F.3d at 213 n.7. Regardless the label, the facts of Chase's counterclaims and those of Eze's claims certainly satisfy Gibbs. Thus, the Court finds that, given the relationship between the counterclaims and the original claims, it has supplemental jurisdiction over Chase's counterclaims: "The counterclaims and the underlying claim bear a sufficient factual relationship (if one is necessary) to constitute the same 'case' within the meaning of Article III and hence of" 28 U.S.C. 1367. Id. at 213-14; see also 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Certainly, both Chase's contract and alternative unjust enrichment claims originate from the very transaction Eze challenges in the complaint, that is, his denial of the alleged application for, and use of, the Chase Visa credit card. See, e.g., Jones, 358 F.3d at 214. Thus, Eze's motion to dismiss for want of subject-matter jurisdiction is denied.

F.   The BCCA Is a Valid and Binding Contract

---

[6] "Whether a counterclaim is compulsory or permissive turns on whether the counterclaim 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim,' and this Circuit has long considered this standard met when there is a 'logical relationship' between the counterclaim and the main claim." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (citation omitted); see also FED. R. CIV. P. 13(a)-(b).

Under the BCCA, use of the credit card, whether signed or unsigned, by "you" or "anyone authorized by you" creates a binding agreement. (See Demczak Aff., Ex. 1, at 1.) As a result, the fact that Eze has allegedly never signed his credit card is of no matter. Even assuming, on Chase's motions to dismiss and for judgment on the pleadings, that all of Eze's properly pled allegations are true, the Court finds that the BCCA is a valid contract. by the terms of the agreement, Eze is a "you," that is, a person responsible for complying with the agreement. There are several grounds supporting this finding. For example, Williamson's use of any such credit card—which Eze admitted was authorized by him, (see, e.g., 10/28/09 Tr. at 4)—was enough to create a binding agreement.[7] Further, Eze has admitted that, contrary to what he alleged in his complaint, he used, or, at least, may have used the card, (see, e.g., 5/6/10 Tr. at 9; see also id. at 7-8, 10, 15), and Eze has allowed that a finder of fact might well link his opening a checking account on Duce's behalf to there being an admitted contact between him and Chase to open a credit card account. (See id. at 10-13.) But, most obviously, Eze himself stated that Chase addresses the credit card billing statements to him, (see, e.g., id. at 5-7; see also id. at 16), which is an unchallenged act that puts him squarely under the provisions of the BCCA. As a person responsible for complying with the BCCA, Eze became bound by it as soon as the card was validly used, which, as Eze has admitted, it was. Accordingly, the Court finds that, under Rule 12(c), there are no material issues of fact or law in dispute and that Chase is entitled to judgment against Eze on the pleadings, pursuant to the terms of the BCCA, for $13,584.73 plus interest (from May of 2009). Obviously, for the same reasons, because there was a valid contract

---

[7] There is some dispute as to whether a credit card was issued to Eze and Duce alone or to Eze and Duce as well as to Williamson and Duce. This dispute is of no moment, though, because Eze himself confirmed that Williamson used a Chase-issued credit card, (Compl. ¶ 16), and that she was an authorized user of the card. (See, e.g., 10/28/09 Tr. at 4.) The BCCA defines credit "card" to mean "one or more cards . . . that we have issued to permit you to obtain credit under this agreement." (Demczak Aff., Ex. 1, at 1.) Accordingly, Eze is liable to Chase for any purchases made by Williamson as well.

12

between Eze and Chase, the Court dismisses Eze's complaint against Chase[8] as well as Chase's counterclaim regarding unjust enrichment. Chase's third-party complaint is also dismissed.

CONCLUSION

For the reasons set forth above, Eze's motion to dismiss Chase's counterclaims is denied. Chase's motions to dismiss the complaint and for judgment on the pleadings with respect to its first counterclaim are granted. The third-party complaint is dismissed without prejudice.

The Clerk is directed to enter judgment against Eze in the amount of $13,584.73, with interest from May 1, 2009, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
August 10, 2010

ERIC N. VITALIANO
United States District Judge

---

[8] The Court may continue to exercise supplemental jurisdiction over Chase's counterclaims despite having dismissed all of the claims over which it had original jurisdiction. See 28 U.S.C. § 1367(c)(3).

13